UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    -against-<br><br>GLENWOOD MANAGEMENT CORPORATION,<br>LIBERTY STREET REALTY, LLC, and STEPHEN<br>B. JACOBS GROUP, PC,<br><br>                Defendants. | 16 Civ. 836<br><br>ECF CASE<br><br>**CONSENT DECREE** |

## INTRODUCTION

This Consent Decree is entered into between Plaintiff, the United States of America (the "United States"), and Defendants Glenwood Management Corporation ("Glenwood"), and Liberty Street Realty, LLC (together, the "Settling Defendants");

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601-3619; specifically, the United States' complaint in this Action, filed on February 3 , 2016, alleges that the above-captioned defendants have engaged in a pattern or practice of discrimination, and have denied rights to a group of persons in a manner raising an issue of general public importance, including by failing to design and/or construct Liberty Plaza, a residential apartment complex in downtown Manhattan, with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, Liberty Plaza is subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

## A.       The Settling Defendants

WHEREAS, Glenwood Management Corporation is a New York business corporation that, directly and/or operating through its subsidiaries and affiliates, developed, and,

in that capacity participated in, the design and construction of Liberty Plaza;

WHEREAS, Liberty Street Realty, LLC, a Delaware limited liability company, owns, and, in that capacity participated in, the design and construction of Liberty Plaza;

**B.      The Architect Defendant**

WHEREAS, Stephen B. Jacobs Group, PC, a New York professional corporation, drew the architectural plans for, and, in that capacity participated in, the design and construction of Liberty Plaza (the "Architect Defendant");

WHEREAS, the Architect Defendant is not a party to this Consent Decree;

**C.      The Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings with four or more dwelling units, and one or more elevators, designed and constructed for first occupancy after March 13, 1991, are Covered Multifamily Dwellings and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability, 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(c) (these provisions and features are

referred to herein as the "Accessible Design Requirements");

**D.      Conditions at Liberty Plaza**

WHEREAS, Liberty Plaza is a residential apartment building located at 10 Liberty Street in New York, New York.  The complex consists of a tower with elevator access and contains 287 covered multifamily dwelling units, as well as public and common use areas including a leasing office, landscaped public plaza, retail space, sundeck, swimming pool, fitness center, laundry room, children's playroom, and conference/business center;

WHEREAS, the United States inspected Liberty Plaza in January 2010 and identified, among other things, the following conditions at Liberty Plaza that the United States alleges fail to meet the Accessible Design Requirements:

- Insufficient clear opening width at and excessive force required to operate the entrance doors to the building lobby;

- Excessively high threshold at entrance to left bathroom for the leasing office;

- Mailboxes mounted too high for persons who use wheelchairs;

- Excessively high thresholds at entrances to individual units and at entrances to individual unit bathrooms, kitchens, and terraces;

- Insufficient clear opening width of bedroom, bathroom, and walk-in closet doors in individual units;

- Hallways in individual units lack sufficient width to accommodate persons who use wheelchairs;

- Kitchen ranges and refrigerators in individual units lack sufficient clearance for persons who use wheelchairs;

- Insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;

- Rear grab bar location behind toilets in individual unit bathrooms obstructed by countertops;

- Inaccessible locations of electrical outlets in individual kitchens for persons who use wheelchairs;

- Excessively high threshold at entrance to the building's administrative office;

- Excessively high thresholds at entrances to the trash rooms;

- Excessively high threshold and excessive force required to operate the entrance doors to the laundry room;

- Excessively high threshold and excessive force required to operate the entrance door from the children's play room vestibule;

- Excessively high thresholds at entrances to both conference rooms; and

- Excessively high thresholds and excessive force required to operate the entrance door to the fitness center.

**E.    Consent of the Parties to Entry of this Decree**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a), and further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, the parties' entry into this Consent Decree is not intended to and does not limit Glenwood or Liberty Street Realty, LLC, individually or collectively, from instituting a separate action seeking contribution, or damages in the nature of indemnification or breach of contract, or for any related reason from any individual or entity involved in the design or construction of the property that is the subject of this Consent Decree, including but not limited to the Architect Defendant;

WHEREAS Glenwood and Liberty Street Realty, LLC agree to make modifications to Liberty Plaza as set forth herein and the attached appendices;

WHEREAS, pursuant to Section IV of this Consent Decree, the United States and Glenwood have agreed to a process for identifying the retrofits to be made at certain other rental properties developed by Glenwood, identified on Appendix E to this Consent Decree;

WHEREAS, the United States and Glenwood anticipate agreeing that the in-unit retrofits for the conditions set forth in Appendix J to be performed by Glenwood pursuant to Section IV of this Consent Decree will be generally comparable in scope to those set forth in Appendix B, subject to the extent and frequency of the deviations, if any, of the in-unit conditions at any of the buildings identified on Appendix E from the relevant aspects of the Standard selected for that building pursuant to paragraph 24 of this Consent Decree; and

WHEREAS, the parties agree to the entry of this Consent Decree;

**It is hereby ORDERED, ADJUDGED, and DECREED:**

## I. GENERAL INJUNCTION

1.     The Settling Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604.

## II. RETROFITS AT LIBERTY PLAZA

2.     The United States alleges that Liberty Plaza was not designed or constructed in accordance with the FHA or the Fair Housing Accessibility Guidelines, Design Guidelines for Accessible/Adaptable Dwellings, 56 Fed. Reg. 9472 (Mar. 6, 1991) (the "Guidelines"). Without admitting liability, Glenwood agrees to address the conditions alleged to be FHA violations by making, with respect to Liberty Plaza, the modifications set forth in Appendices A and B.

**A.    Modifications to the Public and Common Use Areas**

3.    The Settling Defendants assert that they instructed the Architect Defendant to design the public and common use areas of Liberty Plaza to comply with any and all applicable laws, rules, and regulations, and the Architect Defendant had a legal responsibility to design such plans.

4.    The Settling Defendants acknowledge that the public and common use areas at Liberty Plaza do not meet the requirements of any recognized safe harbor for compliance with the FHA.  The Settling Defendants agree to modify the public and common use areas of Liberty Plaza by taking the actions described herein and in Appendix A.

5.    As soon as reasonably possible, but no later than six (6) months from the entry of this Consent Decree, Glenwood shall finish the retrofits listed in Appendix A.  Glenwood shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

6.    Within fifteen (15) days of the entry of this Consent Decree, Glenwood shall provide written notices to all residents at Liberty Plaza stating that the retrofits required by this Consent Decree will be performed to the public and common use areas at Liberty Plaza.  Such notice shall conform to Appendix C.

7.    Glenwood shall certify to the United States in writing that the notices required by paragraph [6] have been distributed, and shall specify the manner in which they were distributed, within fifteen (15) days after such distribution.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

**B.    Modifications to Dwelling Unit Interiors**

8.    The Settling Defendants assert that they instructed the Architect Defendant to design the dwelling unit interiors of Liberty Plaza to comply with any and all applicable laws,

rules, and regulations, and that the Architect Defendant had a legal responsibility to design such plans.

9.     The Settling Defendants acknowledge that the dwelling unit interiors of Liberty Plaza do not meet the requirements of any recognized safe harbor for compliance with the FHA. Glenwood and Liberty Street Realty, LLC agree to modify the dwelling unit interiors at Liberty Plaza by taking the actions described below and in Appendix B.

10.     For each unit at Liberty Plaza listed in Appendix B, as soon as reasonably possible, but no later than six (6) months from the entry of this Consent Decree (unless otherwise specified in Appendix B), Glenwood and/or Liberty Street Realty, LLC shall finish the retrofits listed in Appendix B.  Glenwood and/or Liberty Street Realty, LLC shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

11.     Within thirty (30) days from the date of the entry of this Consent Decree, Glenwood and/or Liberty Street Realty, LLC shall inform each resident that resides in an individual dwelling unit at Liberty Plaza that is subject to being retrofitted: (1) the United States has alleged that certain features of the resident's unit do not meet the accessible and adaptive design requirements of the Act and that, to settle this lawsuit, Glenwood and Liberty Street Realty, LLC agreed to retrofit certain features of the Covered Multifamily Dwellings units to make them more accessible; (2) the retrofits set forth in Appendix B will be provided within forty-five (45) days of any request but will, in any event, take place within six (6) months from the entry of this Consent Decree; and (3) the scheduling of the retrofits will take into account the preferences and convenience of the resident or future resident and relocation costs, if any, will be provided in advance.  The notice shall be substantially in the form of Appendix D and may be delivered electronically or in hard copy.

12.     Glenwood and/or Liberty Street Realty, LLC shall certify to the United States in writing that the notices described in paragraph [11] have been distributed, and shall specify the manner in which they were distributed, within fifteen (15) days after such distribution.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

### III. RECENT CONSTRUCTION

13.     Glenwood is completing construction of two multifamily housing complexes located at 160 West 62nd Street and 329 West 38th Street in Manhattan.  In connection with this Action, a surveyor retained by Glenwood has inspected both buildings pursuant to a protocol agreed to between Glenwood and the United States.  In June 2014, the surveyor retained by Glenwood submitted reports to Glenwood, which Glenwood provided to the United States, concerning the conditions at the two buildings that do not conform to the specifications set forth in the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act (August 1996, Rev. April 1998) (the "Fair Housing Act Design Manual").

14.     In addition, Glenwood recently completed construction of a multifamily housing complex at 330 West 39th Street in Manhattan (hereinafter referred to, together with the two buildings identified in paragraph [13] of this Consent Decree, as "Recent Construction").  Within sixty (60) days of the entry of this Consent Decree, the surveyor referenced in paragraph [13] of this Consent Decree shall inspect the building at 330 West 39th Street in Manhattan pursuant to a protocol agreed to between Glenwood and the United States.  Within ninety (90) days of the entry of this consent decree, Glenwood will obtain and provide to the United States a report prepared by the surveyor concerning the conditions, if any, at 330 West 39th Street that do not conform to the specifications set forth in the HUD Design Manual (hereinafter referred to,

together with the reports referenced in paragraph [13] of this Consent Decree, as the "Recent Construction Inspection Reports").

15.   Within one hundred and twenty (120) days of entry of this Consent Decree, unless otherwise agreed to by the parties or ordered by the Court, Glenwood shall submit to the United States a proposal for performing the retrofits required to bring the common and public use areas and the individual units at the Recent Construction into compliance with the FHA.

16.   Within thirty (30) days of receipt of the retrofit proposal for the Recent Construction, unless otherwise agreed to by the parties or ordered by the Court, the United States shall notify Glenwood in writing of any objections to the proposal.  If there are no written objections, Glenwood shall proceed with the modifications as specified.  If the United States objects, the parties shall endeavor to expeditiously and in good faith resolve any objections, after which Glenwood shall, within fifteen (15) days (except as otherwise agreed to by the parties or ordered by the Court), submit a revised retrofit proposal, to which the United States shall have fifteen (15) days to provide written objections; if there are no objections, Glenwood shall, unless otherwise agreed to by the parties or ordered by the Court, proceed with the modifications as specified in the revised retrofit proposal.  If, after expeditious and good faith negotiations, the parties are unable to resolve any differences concerning appropriate modifications, either party may raise the matter(s) to the Court for resolution.

17.   Glenwood shall make the retrofits to common or public use areas at the Recent Construction within ninety (90) days of the United States' approval of the retrofit proposal, unless otherwise agreed to by the parties or ordered by the Court.  Glenwood shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

18.   Following the United States' approval of the retrofit proposal for the Recent Construction, Glenwood shall perform all retrofits to individual dwelling units no later than (a)

9

one hundred and eighty (180) days after the United States' approval of the retrofit proposal, or (b) ten (10) days from the request of any resident or future resident of the unit, unless otherwise agreed to by the parties or ordered by the Court.  Glenwood shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

19.    Within thirty (30) days of the United States' approval of the retrofit proposal for the Recent Construction, unless otherwise agreed to by the parties or ordered by the Court, Glenwood shall inform each resident or prospective resident for a unit that is subject to being retrofitted in any manner set forth in the retrofit proposal, that (1) to settle a lawsuit, Glenwood has agreed to retrofit certain features of the unit to make them more accessible; (2) additional features of accessible and adaptive design can be retrofitted in the unit upon request of the resident or prospective resident; (3) the retrofits offered will be at no cost to the unit resident or prospective resident; and (4) the scheduling of the retrofits will take into account the preferences and convenience of the resident or prospective resident and that relocation costs, if any, will be provided in advance.[1]  The notice(s) shall be substantially in the form of <u>Appendix D</u>, modified as appropriate to reflect the particular Recent Construction at issue and the applicable retrofits.

20.    Glenwood shall certify to the United States in writing that the notices described in paragraph 19 have been distributed and shall specify the manner in which they were distributed as part of their annual reporting requirement.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

21.    Glenwood shall pay all costs associated with the modifications/retrofits to each of the Recent Construction, without prejudice to its ability to seek contribution or indemnification from other sources.

---

[1]    For purposes of this Consent Decree, "prospective resident" shall mean any individual who has taken a tour of a unit and/or applied to lease a unit, but has not yet signed a lease.  The scheduling of mandatory retrofits in individual units need not take into account the preferences and convenience of a prospective resident who has not yet signed a lease.

## IV. ADDITIONAL PROPERTIES

22.     In addition to Liberty Plaza, Glenwood has designed and constructed for occupancy after March 13, 1991 certain other multifamily housing complexes, listed in Appendix E.  These properties shall be referred to as "Additional Properties."

23.     Within thirty (30) days from the entry of this Consent Decree, Glenwood shall retain one or more licensed design professionals with expertise regarding the FHA and the Accessible Design Requirements ("Surveyor(s)"), approved by the United States, to survey each of the Additional Properties to determine what actions, if any, must be taken to bring these properties into compliance with the accessibility requirements of the FHA.

24.     For purposes of conducting surveys and reporting survey results as required by Section IV of this Consent Decree, the Surveyor(s) shall measure and report compliance with the FHA by reference to one of the following standards (each a "Standard"), where such a single Standard has been used in its entirety: (i) the Guidelines; (ii) a standard designated as an FHA safe harbor by the Department of Housing and Urban Development; or (iii) a recognized, comparable, objective standard of accessibility that has been found by this District Court or the Second Circuit to incorporate the requirements of the Fair Housing Act.  For each Additional Property, Glenwood shall select a single Standard that shall be applied by the Surveyor to that property.  There is no requirement that Glenwood select or that the Surveyor apply the same Standard to each of the Additional Properties.

25.     The Surveyor(s) shall physically inspect (i) all common and public use areas at each Additional Property, and, (ii) and appropriate number of units at each Additional Property that, based on the Surveyor(s)' review of the architectural or site plans, drawings, or blueprints, and the Surveyor(s)' professional judgment, contain a representative sample of the in-unit features at that Additional Property.

11

26.     Glenwood shall provide the Surveyor(s) with the best available information regarding the size and location of grab bar reinforcements.  Such information shall include a physical inspection of one dwelling unit bathroom within each property to ascertain the presence and length of grab bar reinforcement, and a certification from a person involved with the construction of such property that similar reinforcements were installed in all other units of that property.  Neither Glenwood nor the Surveyor(s) will be required to use destructive testing to comply with the requirements of this paragraph.

27.     Within one hundred twenty (120) days of the entry of this Consent Decree, unless otherwise agreed to by the parties or ordered by the Court, Glenwood shall provide the United States with a schedule of the surveys to be performed for each of the Additional Properties, along with a detailed description of the scope and methodology of each survey, including how the Surveyor(s) will identify and survey representative unit types to ensure that all potential FHA violations are identified in accordance with this Consent Decree, and with survey instructions developed by Glenwood and approved by the United States.  The parties agree that the in-unit conditions to be surveyed in the Additional Properties shall be those set forth on Appendix J to this Consent Decree.  No survey may be commenced absent the approval of the United States as to the schedule, scope, and methodology of the survey.  Each survey shall include photographic documentation of any feature that does not comply with the requirements of the FHA.

28.     Glenwood shall complete surveys of the Additional Properties within twelve (12) months of entry of this Consent Decree, unless otherwise ordered by the Court.  The United States and Glenwood each shall have the right to accompany the Surveyor(s) on his or her survey of each property, and the Surveyor(s) shall provide the United States with reasonable notice of each survey, at least thirty (30) days in advance of any survey.  For each Additional Property, within thirty (30) days following the completion of the physical survey of that property, the

Surveyor(s) shall provide to the United States and Glenwood a detailed written report setting out the scope and methodology of each survey and all of the information set forth in paragraph 27 above, including details and photographic documentation regarding any features that do not comply with the Standard applicable to that Additional Property.

29.    Within ninety (90) days of receipt of each report of the Surveyor(s), unless otherwise agreed to or ordered by the Court, Glenwood shall submit to the United States a proposal for performing the retrofits required to bring the common and public use areas and the individual dwelling units into compliance with the accessibility requirements of the FHA.  In creating such proposals, Glenwood may consider factors including, but not limited to, how specific design features provide accessibility for persons with disabilities, the inconvenience to residents, and cost.  Glenwood shall not be deemed to have admitted liability based on its proposing or making a retrofit to any condition in an Additional Property.

30.    Within sixty (60) days of receipt of each retrofit proposal, unless otherwise agreed to by the parties or ordered by the Court, the United States shall notify Glenwood in writing of any objections to the proposal.  If there are no written objections, Glenwood shall proceed with the modifications as specified.  If the United States provides objections, the parties shall endeavor to expeditiously and in good faith resolve any objections, after which Glenwood shall, within thirty (30) days, unless otherwise agreed to or ordered by the Court, submit a revised retrofit proposal, to which the United States shall have thirty (30) days to provide written objections; if there are no objections, Glenwood shall proceed with the modifications it specified in the revised retrofit proposal.

31.    The United States and Glenwood anticipate agreeing that the in-unit retrofits to be performed pursuant to Section IV of this Consent Decree, for the conditions identified in Appendix J, will be generally comparable in scope to those set forth in Appendix B, subject to

13

the extent and frequency of the deviations, if any, of an in-unit condition present at an Additional

Property from the relevant aspects of the Standard selected for that building pursuant to

paragraph 24 of this Consent Decree.  If, after expeditious and good faith negotiations, the

parties are unable to resolve any differences concerning appropriate modifications, either party

may raise the matter to the Court for resolution.

32.     Unless otherwise agreed to by the parties, pursuant to the process described in

paragraphs 23-31 of this Consent Decree, or ordered by the Court, Glenwood shall make the

retrofits to common or public use areas of each Additional Property within nine (9) months of the

United States' approval of a retrofit proposal for that property.  Glenwood shall make reasonable

efforts to minimize inconvenience to residents in making such retrofits.

33.     In the buildings identified on Appendix E, Glenwood shall perform all retrofits to

individual dwelling units no later than the earliest of (a) prior to the re-occupancy of a vacated

unit, (b) ten (10) days from the written request of any resident or future resident of the unit, or (c)

the expiration of the Consent Decree.  Glenwood shall make reasonable efforts to minimize

inconvenience to residents in making such retrofits.

34.     Within thirty (30) days of the United States' approval of a retrofit proposal for a

particular Additional Property, unless otherwise agreed to by the parties or ordered by the Court,

Glenwood shall inform each resident or prospective resident of an individual dwelling unit that is

subject to being retrofitted in any manner set forth in the applicable retrofit proposal that (1) to

settle a lawsuit, Glenwood agreed to retrofit certain features of the unit to make the unit more

accessible; (2) the features of accessible and adaptive design can be retrofitted in the unit upon

written request of the resident or prospective resident; (3) the retrofits offered will be at no cost

to the unit resident or prospective resident; and (4) the scheduling of the retrofits will take into

account the preferences and convenience of the resident or prospective resident and that

14

relocation costs, if any, will be provided in advance.  The notice(s) shall be substantially in the form of Appendix D, modified as appropriate to reflect the particular property at issue and the applicable retrofit proposal.

35.    Glenwood shall certify to the United States in writing that the notices described in paragraph [34] for the Additional Properties have been distributed and shall specify the manner in which they were distributed as part of its annual reporting requirement.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

36.    Glenwood shall pay all costs associated with the surveys and modifications/ retrofits to the Additional Properties, without prejudice to its ability to seek contribution or indemnification from other sources.

## V.  PER DIEM FOR DISPLACEMENT

37.    In the event that a resident of a unit within Liberty Plaza or an Additional Property that is scheduled to undergo a modification is dislocated from his or her unit for more than a 14-hour consecutive period, Glenwood and or Liberty Street Realty, LLC shall pay such resident, *pro rata*, the applicable federal government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day or half-day of undue inconvenience or hardship.  Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations while dislocated.

## VI.  NO ADVERSE ACTION

38.    Neither present nor future residents of Liberty Plaza, a Recent Construction, or an Additional Property may be charged any additional rent, deposit, fee, or other consideration for the dwelling units in which retrofits are or may be implemented because of completed, contemplated, or possible retrofits.  Glenwood and Liberty Street Realty, LLC shall take no

adverse action against any present or future resident of Liberty Plaza, any Recent Construction, or any Additional Property because such person requests to have his or her apartment, or prospective apartment, modified in accordance with this Consent Decree. Nothing in this paragraph shall restrict or impede the rights of Glenwood or Liberty Street Realty, LLC to continue, in a non-discriminatory manner, to lawfully establish and raise rents consistent with their business goals and obligations and with market conditions, including to increase rents after the expiration of a current lease due to an increase in the market value of the unit, whether or not such an increase is on account of upgrades to such unit (other than retrofits required under this Consent Decree) done at or about the same time as retrofits required under this Consent Decree. Performance of the retrofits required by the terms of this Consent Decree does not constitute a diminution in services provided by Glenwood or Liberty Street Realty, LLC at Liberty Plaza, any Recent Construction, or any Additional Property.

## VII.   IMPEDIMENTS TO PERFORMANCE

39.   In the event that any act or omission beyond the control of Glenwood and Liberty Street Realty, LLC and occurring without the fault or negligence of either of them affects the performance of any requirement in Section II, III, or IV of the Consent Decree, Glenwood, Liberty Street Realty, LLC, and the United States shall endeavor, in good faith, to determine whether modifications to this Consent Decree are necessary and, if so, to seek jointly such modifications from the Court. If such efforts are unsuccessful, the United States, Glenwood, or Liberty Street Realty, LLC may seek relief from the Court. In particular, if a resident of Liberty Plaza, the Recent Construction, or any Additional Property refuses (whether lawfully or not) to vacate a unit so that required retrofits can be made, Glenwood and/or Liberty Street Realty, LLC shall make the retrofit once that resident terminates his or her lease, and this obligation shall survive beyond the expiration of this Consent Decree. Nothing herein shall be construed as

16

requiring Glenwood or Liberty Street Realty, LLC to bring a lawsuit against a resident who refuses to allow either of them to perform a retrofit to that resident's unit, as specified in Sections II, III or IV of this Consent Decree; and nothing herein shall be construed as requiring Glenwood or Liberty Street Realty, LLC to perform any act beyond the expiration of this Consent Decree except as specified in this paragraph and in paragraph [49] below.

## VIII.   NEUTRAL INSPECTOR

40.    Glenwood and/or Liberty Plaza shall enter into a contract with a neutral inspector(s) approved by the United States ("Inspector(s)") to conduct on-site inspections of all retrofits performed under this Consent Decree to determine whether modifications have been made in compliance with the specifications in Appendices A and B at Liberty Plaza, the specifications in the approved retrofit proposals for the Recent Construction, and the specifications in the approved retrofit proposals for the Additional Properties.  The Inspector(s) shall have expertise in the design and construction requirements of the FHA.  Glenwood and/or Liberty Street Realty may, subject to approval by the United States, elect to retain the Surveyor(s) as the Inspector(s).

41.    The Inspector(s) may, upon request of Glenwood and/or Liberty Street Realty, LLC, review and comment upon the sufficiency of all proposed retrofits in writing in advance of any retrofit by Glenwood and/or Liberty Street Realty, LLC, but such review and comment shall be completed no later than fourteen (14) days after the request.

42.    An initial inspection of each Recent Construction shall take place within thirty (30) days of the completion of the retrofits (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree) set forth in the applicable approved retrofit proposal, or as soon thereafter as practical.

43.     An initial inspection of Liberty Plaza shall take place within sixty (60) days of the completion of all of the retrofits set forth in, respectively, Appendices A and B (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree).  An inspection of each Additional Property shall take place within thirty (30) days of the completion of the retrofits set forth in the applicable approved retrofit proposal (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree), or as soon thereafter as is practical.

44.     With regard to retrofits for Liberty Plaza, the Recent Construction, and the Additional Properties that are required to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree, an initial inspection of those retrofits shall take place within thirty (30) days after three (3) years have passed from the entry of this Consent Decree.

45.     For purposes of efficiency, Glenwood and/or Liberty Street Realty, LLC may, with the approval of the United States, schedule the initial inspection of multiple properties required by Section VIII of this Consent Decree in combination with each other.

46.     For each initial inspection, Glenwood and/or Liberty Street Realty, LLC shall give the United States at least twenty-one (21) days' prior notice of the inspection.  The United States, Glenwood and/or Liberty Street Realty, LLC each shall have the right to have a representative present for the inspection.

47.     The Inspector(s) shall set out in writing the results of his or her inspection, including any deficits, and shall send that report to Glenwood and to the United States.[2]  The

---

[2]     For purposes of this Consent Decree, notices provided to the United States shall be addressed to Chief, Civil Rights Unit, Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, NY 10007.  Electronic courtesy copies also shall be delivered to the undersigned Assistant United States Attorneys. Notices provided to Glenwood or Liberty Street Realty, LLC, shall be addressed to Glenwood, care of Joanna Hendon at Spears & Imes LLP, 51 Madison Avenue, New York, NY 10010. Electronic courtesy copies shall also be delivered to Glenwood and/or Liberty Street Realty,

report shall state whether the retrofits required by the applicable Appendix or approved retrofit proposal have been completed and shall list any required retrofits that were not completed.

48.     If the inspection indicates that not all of the required retrofits have been made as specified in the applicable Appendices, or retrofit proposals, Glenwood and/or Liberty Street Realty, LLC shall correct any deficiencies within sixty (60) days and shall pay for another inspection by the same Inspector(s) to certify that the deficiencies have been corrected. This process shall continue until the Inspector(s) certifies that all of the necessary modifications have been made. Glenwood and/or Liberty Street Realty, LLC shall pay all of the Inspector(s)'s reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector(s)'s findings. Upon reasonable notice, representatives of the United States shall be permitted to inspect the modifications and/or the third-party inspection reports provided for in this Consent Decree, to ensure compliance, and an expert retained by Glenwood also may attend any such inspection.

49.     Nothing in this Consent Decree shall be read to relieve Glenwood or Liberty Street Realty, LLC of the obligation to schedule inspections and/or correct deficiencies as set forth in this Section (including, but not limited to, inspection of the retrofits that Glenwood and/or Liberty Street Realty, LLC are required to make prior to the expiration of the Consent Decree) even if such obligations extend beyond the duration of this Consent Decree.

## IX. TRANSFER OF INTEREST IN PROPERTIES

50.     The sale or transfer of ownership, in whole or in part, by Glenwood or Liberty Street Realty, LLC of their interest(s), if any, in Liberty Plaza, the Recent Construction, or any of the Additional Properties shall not affect the continuing obligations of Glenwood and/or Liberty Street Realty, LLC to retrofit, and/or conduct or allow inspections or surveys of, Liberty Plaza,

LLC.

the Recent Construction, and the Additional Properties, as specified in this Consent Decree, unless Glenwood or Liberty Street Realty, LLC obtains in writing, as a condition of sale or transfer, the purchaser or transferee's commitment to assume such obligations, so that the purchaser or transferee will be bound by the terms of this Consent Decree to make retrofits and allow or conduct inspections or surveys as set forth in this Consent Decree, and will be subject to the jurisdiction of this Court.

51.    Should Glenwood or Liberty Street Realty, LLC decide to sell or transfer an ownership interest in Liberty Plaza, the Recent Construction, or any of the Additional Properties, in whole or in part, prior to the completion of the retrofits specified in this Consent Decree for these buildings, Glenwood and/or Liberty Street Realty, LLC will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide each prospective buyer with a copy of this Consent Decree and written notice that the property is subject to this Consent Decree, including specifically the obligation of Glenwood and/or Liberty Street Realty, LLC to (i) complete required retrofit work and allow inspections, or (ii) assign such obligations to the purchaser or transferee by obtaining the purchaser or transferee's commitment to be bound by this Order, subject to the jurisdiction of this Court; and (b) provide to the United States, by facsimile and first-class mail, written notice of the owner's intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

## X.  NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

52.    Glenwood shall design and construct all new Covered Multifamily Dwellings in full compliance with a Standard.  During the term of this Consent Decree, upon reasonable notice, the United States will be permitted full access to such properties to inspect for compliance with such standards, rules, and laws.

53.    For each Covered Multifamily Dwelling that Glenwood constructs during the term of this Consent Decree, Glenwood shall retain an FHA compliance consultant (the "FHA Consultant") to help ensure that the as-constructed features at such properties comply with the FHA's Accessible Design Requirements.  Glenwood shall direct its employees, agents, and/or contractors to seek the FHA Consultant's advice regarding the selection of appliances (*e.g.*, refrigerators and ranges) and fixtures (*e.g.*, doors, thresholds, and lavatories), the effect of deviations from the architects' plans on the accessibility of conditions at the property; as well as other issues that arise during construction that affect accessibility.  Further, prior to the completion of construction of each building, Glenwood shall arrange for the FHA Consultant to conduct a visit of the building to identify any construction issues that may result in inaccessible conditions and recommend appropriate solutions.

54.    The agreement or contract between Glenwood and the FHA Consultant shall reference the fact that the FHA Consultant is being retained pursuant to this Consent Decree. Further, within thirty (30) days of retaining the FHA Consultant, Glenwood shall provide a copy of this Consent Decree to the FHA Consultant and secure the signed statement from the FHA Consultant acknowledging that he or she has received and read the Consent Decree and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix H.

55.    During the term of this Consent Decree, Glenwood shall submit, on an annual basis, a certification to the counsel for the United States affirming that they have retained an FHA Consultant for each Covered Multifamily Dwelling under construction during that year and specifying each covered multifamily dwelling for which an FHA Consultant was retained by Glenwood to provide advice and the identity (and affiliation, if applicable) of the FHA Consultant.  Glenwood shall provide this certification within fifteen (15) days of the end of each

21

12-month period from the entry of this Consent Decree.

56.    For the duration of this Consent Decree, Glenwood shall maintain, and provide to the United States upon request, the following information and statements regarding any multifamily dwellings intended to be designed, and/or constructed in whole or in part, by any one of them, including but not limited to any multifamily dwelling in which Glenwood has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or more ownership share:

- the name and address of the project;

- a description of the project and the individual units;

- the name, address, and telephone number of the civil engineer(s) involved with the project;

- a statement from the civil engineer(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of the FHA and in the field of accessible site design, certifying that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply;

- the name, address and telephone number of the architect(s) who are employed or retained by Glenwood and are involved with the project;

- a statement from all architect(s) who are employed or retained by Glenwood and are involved with the project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the Guidelines, and in the field of accessible site design, certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the

requirements of the FHA, and stating a Standard with which the design specifications comply.

57.    If the engineering documents or architectural plans referred to in paragraph 56 are revised, and the revisions could have any impact on whether the dwellings or complex complies with the FHA, Glenwood shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s) who are employed or retained by Glenwood and are involved with the project, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

58.    For the term of this Consent Decree, if the Architect Defendant prepares any architectural or site plans, drawing, or blueprints for covered multi-family housing, as defined in the FHA, then it shall include on such plans, drawing, or blueprints a statement attesting to compliance with the FHA and a Standard, and it shall maintain and provide such plans, drawing, or blueprints to the United States upon request.

## XI. PAYMENTS TO AGGRIEVED PERSONS

59.    Within thirty (30) days of entry of this Consent Decree, Glenwood shall deposit in an interest-bearing account the sum of four hundred and forty thousand dollars ($440,000) for the purpose of compensating any aggrieved persons who may have suffered as a result of Glenwood's and/or Liberty Street Realty, LLC's discriminatory housing practices regarding Liberty Plaza and the Additional Properties. This deposited money, plus any accrued interest, shall be referred to as the "Initial Settlement Fund."

60.    Within thirty (30) days of the entry of this Consent Decree, Glenwood shall publish the notice at Appendix F, entitled "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at Liberty Plaza and Other Rental Buildings" (the "Notice"), informing

23

readers of the availability of compensatory funds.  The Notice shall be no smaller than three

columns by six inches and shall be published on three occasions in the *New York Daily News* and

in the following publications of Straus News:  *Our Town, Eastsider, West Side Spirit, Westsider,*

*Chelsea News, Chelsea Clinton News, Our Town Downtown,* and *Downtowner*.  The three

publication dates shall be separated from one another by twenty-one (21) days, and at least two

of the publication dates shall be on a Sunday (or Saturday, if the newspaper is not published on

Sunday).  Within thirty (30) days of each publication of the Notice in a newspaper Glenwood

shall provide copies of the publication containing the Notice to the United States.

61.    Within thirty (30) days of entry of this Consent Decree, Glenwood shall place on

the website http://www.glenwoodnyc.com/properties/downtown-apartments/liberty-plaza/ a link

to an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF").

The link should state "Notice to Persons Who May Have Suffered from Inadequate Accessible

Features at Liberty Plaza," and should appear on the upper half of the website, in a conspicuous

font style and color, in a font size no smaller than the font size for any of the terms "Green

Design," "Floor Plans," "Residences," "Amenities," "Neighborhood," "Gallery," and "Contact"

as they appeared on the aforementioned website as of ____, 2015.

62.    Within sixty (60) days of entry of this Consent Decree, Glenwood shall place, on

any website maintained by Glenwood with respect to any of the Additional Properties, a link to

an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF").

The link should state "Notice to Persons Who May Have Suffered from Inadequate Accessible

Features at [the relevant Additional Property]," and should appear on the upper half of the

website, in a font that is clearly visible, in a prominent font size.

63.    Within sixty (60) days of the entry of this Consent Decree, Glenwood and/or

Liberty Street Realty, LLC shall send a copy of the Notice to each of the following

organizations:

Brooklyn Center for Independence of the Disabled
27 Smith Street, Suite 200
Brooklyn, New York  11201;

Bronx Independent Living Services
4419 Third Avenue, Suite 2C
Bronx, New York  10457;

Center for Independence of the Disabled, NY
841 Broadway, #301
New York, New York 10003;

Disability Law Center at New York Lawyers for the Public Interest
151 W. 30th Street, 11th Floor
New York, New York 10001;

Disability Rights Advocates
1560 Broadway, 10th Floor
New York, New York 10036;

Fair Housing Justice Center
5 Hanover Square, 17th Floor
New York, New York 10004;

Harlem Independent Living Center
289 St. Nicholas Avenue, Suite 21, Lower Level
New York, New York 10027;

The Legal Aid Society of New York
199 Water Street
New York, New York 10038;

Legal Services NYC
350 Broadway, Sixth Floor
New York, New York 10016;

MFY Legal Services, Inc.
299 Broadway
New York, New York 10007; and

United Spinal Association
75-20 Astoria Blvd.

Jackson Heights, New York 11370.

64.   Within ninety (90) days of the entry of this Consent Decree, Glenwood and/or Liberty Street Realty, LLC shall send, by first-class mail, postage pre-paid, a copy of the Notice to each past or present resident at Liberty Plaza and the Additional Properties.  For past residents, Glenwood and Liberty Street Realty, LLC shall comply with the requirements of this paragraph by mailing such notice to the forwarding address provided by the former resident at the time the former resident moved out of Liberty Plaza or the relevant Additional Property.  Within one hundred twenty (120) days of entry of this Consent Decree, Glenwood and/or Liberty Street Realty, LLC shall provide the United States with proof that the Notices have been sent.

65.   The United States may make its own efforts to locate and provide notice to potential aggrieved persons.

66.   Glenwood and/or Liberty Street Realty, LLC shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its investigations to locate allegedly aggrieved persons and make determinations regarding their potential claims.  In addition, Glenwood and/or Liberty Street Realty, LLC shall identify to the United States any allegedly aggrieved persons or any past, present, or prospective residents of Liberty Plaza or the Additional Properties who have disabilities or regular guests with disabilities, to the extent that Glenwood and/or Liberty Street Realty, LLC or their employees or agents at Liberty Plaza or the Additional Properties, possess the information required to make such identifications.

67.   The United States shall investigate the claims of allegedly aggrieved persons and shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each such person.  The United States will inform Glenwood and/or Liberty Street Realty, LLC in writing of each of its determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  If the United States

26

determines that the Initial Settlement Fund is insufficient to compensate all aggrieved persons at Liberty Plaza and the Additional Properties, the United States shall be entitled to make determinations that award aggrieved persons, in the aggregate, a total amount exceeding the amount in the Initial Settlement Fund, but not exceeding nine hundred thousand dollars ($900,000).

68.   If Glenwood or Liberty Street Realty, LLC disputes the amount of a payment to an aggrieved person, Glenwood or Liberty Street Realty, LLC shall, within fourteen (14) days of receiving notice of a determination from the United States (a "Determination"), provide a written objection to the United States, along with any information or documents that they believe may refute the aggrieved person's claim.  The United States shall give due consideration to any objections it receives from Glenwood or Liberty Street Realty, LLC and shall submit to them, following any objection, its reconsidered determination (a "Reconsidered Determination"), in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid.  If Glenwood or Liberty Street Realty, LLC disputes the Reconsidered Determination, it may file an objection with the Court, which may sustain or overrule the objection.

69.   No later than twenty (20) days after receiving a Determination to which no objection has been made, ten (10) days after receiving a Reconsidered Determination to which no objection has been filed with the Court, or ten (10) days after any decision by the Court ruling upon a filed objection, whichever is earliest, Glenwood shall deliver to the United States checks payable to aggrieved persons in the amounts identified by the United States.  In no event shall the aggregate of all such checks exceed the amount of nine hundred thousand dollars ($900,000), including accrued interest.  No aggrieved person shall be paid until he/she has executed and delivered to the United States and Glenwood the release at Appendix G.

70.   No adverse action shall be taken against any person because such person cooperates with the United States in its investigations, makes a claim, or seeks to make a claim under Section XI of this Consent Decree.

71.   In the event that less than the total amount in the Initial Settlement Fund including accrued interest is distributed to aggrieved persons, and after the United States determines that no further aggrieved persons will be identified, then, no later than the earlier of (a) when the United States determines that no further aggrieved persons will be identified, or (b) the expiration of this Consent Decree, any remainder in the Initial Settlement Fund shall be distributed to a qualified organization(s) mutually agreed upon by the United States and Glenwood, subject to the approval of the Court, for the purpose of conducting fair housing enforcement-related activities in New York City.  Glenwood shall distribute the funds in a manner directed by the Court after the United States informs the Court that no further aggrieved persons will be identified.  Before selecting the qualified organization(s), Glenwood will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purposes, submit such proposal to the United States, and consult with and obtain the non-objection of the United States.  The United States and Glenwood may request modification of the proposal before approving the organization(s).  Glenwood shall also require that the qualified organization(s) receiving funds submit to Glenwood and the United States a detailed report on how the funds are utilized within one year of receipt of funds, and every year thereafter until the funds are exhausted.  Glenwood shall distribute the funds in a manner directed by the Court after the United States informs the Court that no further aggrieved persons will be identified.

## XII. CIVIL PENALTIES

72.   Within thirty (30) days of the date of the entry of this Consent Decree, Glenwood shall pay a civil penalty of fifty thousand dollars ($50,000) pursuant to 42 U.S.C.

§ 3614(d)(1)(C) to vindicate the public interest.  Glenwood shall pay said sum by submitting a check made payable to the "United States of America" to the United States.

### XIII.  EDUCATIONAL PROGRAM

73.    Within ninety (90) days of the entry of this Consent Decree, Glenwood and Liberty Street Realty, LLC shall provide a copy of this Consent Decree to their agents and employees involved in the design or construction of Liberty Plaza, the Recent Construction, or the Additional Properties and obtain from each such agent or employee a statement acknowledging that he or she has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix H.

74.    During the term of this Consent Decree, any new employee, agent, or supervisor of Glenwood or Liberty Street Realty, LLC who will be involved in the design or construction of Covered Multifamily Dwellings shall, within thirty (30) days after the date he or she commences an agency or employment relationship with Glenwood or Liberty Street Realty, LLC, be given a copy of this Consent Decree.  Glenwood and/or Liberty Street Realty, LLC shall obtain from each such agent or employee a signed statement acknowledging that he or she has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix H.

75.    Within sixty (60) days of the entry of this Consent Decree, Glenwood and Liberty Street Realty, LLC shall provide to their agents and employees involved in leasing units at, and/or providing service to residents of, Liberty Plaza, the Recent Construction, or the Additional Properties, a copy of this Consent Decree.  Glenwood and/or Liberty Street Realty, LLC shall obtain from each such agent or employee a signed statement acknowledging that he or she has received and read the Consent Decree and has had an opportunity to have questions

about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix H.

76.    During the term of this Consent Decree any new employee, agent, or supervisor of Glenwood or Liberty Street Realty, LLC who will be involved in the renting of units at, and/or providing service to residents of, Liberty Plaza, the Recent Construction, or the Additional Properties shall, within thirty (30) days after the date he or she commences an agency or employment relationship with Glenwood or Liberty Street Realty, LLC, be given a copy of this Consent Decree.  Glenwood and/or Liberty Street Realty, LLC shall obtain from each such agent or employee a signed statement acknowledging that he or she has received and read the Consent Decree and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix H.

77.    In lieu of providing individuals or entities with copies of the Consent Decree as required by Section XIII of this Consent Decree, Glenwood and Liberty Street Realty, LLC may instead provide a summary of the Consent Decree with the United States' advance written approval of the form and content of the proposed summary.

78.    Glenwood and Liberty Street Realty, LLC shall ensure that they and their employees and agents who have supervisory authority over the design and/or construction of Covered Multifamily Dwellings receive a copy of, are familiar with, and personally have reviewed, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the Fair Housing Act Design Manual.  Glenwood and Liberty Street Realty, LLC shall inform their employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case, of those portions of the FHA that relate to accessibility requirements, reasonable accommodations and reasonable modifications.

79.   Within one hundred and twenty (120) days of the date of entry of this Consent Decree, Glenwood, Liberty Street Realty, LLC, and each of their employees and agents whose duties, in whole or in part, involve or will involve supervision over the development, design and/or construction of multifamily dwellings of the type at issue in this case, shall receive training on the design and construction requirements of the FHA.[3]   The training shall be conducted by a qualified third-party, not associated with Glenwood, Liberty Street Realty, LLC or their counsel, and approved by the Department of Justice; and any expenses associated with this training shall be paid for by Glenwood and/or Liberty Street Realty, LLC.   Thirty (30) days before the training, Glenwood and/or Liberty Street Plaza, LLC shall provide the United States the name(s), address(es) and telephone number(s) of the trainer(s); and copies of the training outlines and any materials to be distributed by the trainers.   Thirty (30) days after the training, Glenwood and/or Liberty Street Realty, LLC shall provide to the United States certifications executed by each of them and by covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix I.

## XIV.   Notice of Defendants' Non-Discrimination Policy

80.   Within thirty (30) days of the date of entry of this Consent Decree, Glenwood and Liberty Street Realty, LLC shall post and prominently display in the sales or rental offices of all Covered Multifamily Dwellings owned or operated by Glenwood or Liberty Street Realty, LLC a sign no smaller than ten (10) by fourteen (14) inches indicating that all dwellings are available for rental on a nondiscriminatory basis.   A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

---

[3]   The educational program provided to employees not engaged in design, construction, or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

81.   For the duration of this Consent Decree, in all future advertising in newspapers and electronic media, and on pamphlets, brochures and other promotional literature regarding the existing complexes or any new complexes that Glenwood or Liberty Street Realty, LLC may design or construct, Glenwood and/or Liberty Street Realty, LLC shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal FHA.

82.   One hundred eighty (180) days after the date of entry of this Consent Decree, Glenwood and Liberty Street Realty, LLC shall submit to the United States an initial report regarding the signed statements of those employees and agents who have completed the training program specified in paragraph 79 of this Consent Decree.  Thereafter, during the term of this Consent Decree, Glenwood and Liberty Street Realty, LLC, shall, on the anniversary of the entry of this Consent Decree, submit to the United States a report containing the signed statements of new employees and agents that, in accordance with paragraphs 74 and 76 of this Consent Decree, they have received and read the Consent Decree, and had an opportunity to have questions about the Consent Decree answered, except that the last report shall be due sixty (60) days prior to the anniversary.

83.   For the duration of this Consent Decree, Glenwood and Liberty Street Realty, LLC shall advise the United States in writing within thirty (30) days of receipt of any written administrative or judicial fair housing complaint regarding any property designed or constructed by them, or against any employee or agent of either of them working at or for any such property, regarding discrimination on the basis of disability in housing.  Upon reasonable notice, Glenwood and/or Liberty Street Realty, LLC shall also provide the United States all information it may request concerning any such complaint.  Glenwood and Liberty Street Realty, LLC shall

also advise counsel for the United States, in writing, within thirty (30) days of the resolution of any complaint.

84.     For the term of this Consent Decree, Glenwood and Liberty Street Realty, LLC are required to preserve all records related to this Consent Decree for Liberty Plaza, the Recent Construction, or the Additional Properties and any other Covered Multifamily Dwellings designed or constructed by them during the duration of this Consent Decree.  Upon reasonable notice to Glenwood and/or Liberty Street Realty, LLC, representatives of the United States shall be permitted to inspect and copy any records of Glenwood and/or Liberty Street Realty, LLC, or inspect any developments or residential units under the control of either of them bearing on compliance with this Consent Decree at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to Glenwood and/or Liberty Street Realty, LLC from such inspections.

## XV.  Low-Income Housing Tax Credit Program Compliance

85.     Glenwood and Liberty Street Realty, LLC are hereby notified that, in the event that they fail to comply with any of the terms of this Consent Decree and the United States obtains an order establishing such noncompliance, the United States may take any appropriate action, including but not limited to notifying the appropriate state housing finance agency of the violation.  See 26 U.S.C. § 42(m)(1)(B)(iii).

## XVI.  DURATION OF CONSENT DECREE AND TERMINATION OF LEGAL ACTION

86.     This Consent Decree shall remain in effect for three (3) years following entry of this Consent Decree by the Court.  By consenting to entry of this Consent Decree, the parties agree that in the event that the Defendants engage in any future conduct occurring after entry of this Consent Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

33

87.     The Complaint in this action is hereby dismissed as to Glenwood and Liberty Street Realty, LLC, without prejudice to its reinstatement in accordance with the next paragraph.

88.     The Complaint in this action shall be reinstated as to Glenwood or Liberty Street Realty, LLC at any time during the term of this Consent Decree if the Court determines that Glenwood or Liberty Street Realty, LLC has failed to perform, in a timely manner, any act required by this Consent Decree or has otherwise failed to act in conformity with any provision of this Consent Decree.

89.     The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree.  The United States may move the Court to extend the duration of the Consent Decree in the interests of justice. The duration of the Consent Decree with respect to Glenwood or Liberty Street Realty, LLC also may be extended by the mutual written agreement of the United States and Glenwood and/or Liberty Street Realty, LLC.

90.     The United States, Glenwood and Liberty Street Realty, LLC shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution.  However, in the event of a failure by Glenwood and/or Liberty Street Realty, LLC to perform, in a timely manner, any act required by this Consent Decree or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

34

91.   Upon the expiration of the Consent Decree and all obligations thereunder, the United States shall seek an order dismissing the Complaint against Glenwood and Liberty Street Realty, LLC with prejudice.

## XVII. TIME FOR PERFORMANCE

92.   Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States, Glenwood or Liberty Street Realty, LLC.

## XVIII. MISCELLANEOUS

93.   The United States, Glenwood and Liberty Street Realty, LLC shall each bear its own costs and attorneys' fees associated with this litigation.

94.   The United States, Glenwood and Liberty Street Realty, LLC understand and agree that this Consent Decree and the appendices thereto contain the entire agreement between them, and that any statements, representations, promises, agreements, or negotiation, oral or otherwise, between the parties or their counsel that are not included herein shall be of no force or effect.

The undersigned apply for and consent to the entry of this Consent Decree:

_For the United States_:

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

PREET BHARARA
United States Attorney

By: _____
LI YU
JESSICA JEAN HU
JACOB LILLYWHITE
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel. Nos. (212) 637-2734/2726/2639
Fax. Nos. (212) 637-2686
Li.Yu@usdoj.gov
Jessica.Hu@usdoj.gov
Jacob.Lillywhite@usdoj.gov

_For Defendants Glenwood and_
_Liberty Street Realty, LLC_:

SPEARS & IMES LLP

By: _____
LINDA IMES
JOANNA C. HENDON
51 Madison Avenue
New York, New York 10010
Tel. Nos. (212) 213-6659
Fax. Nos. (212) 213-0849
limes@spearsimes.com
jhendon@spearsimes.com

SO ORDERED:

2/11/16         _____
J. PAUL OETKEN
United States District Judge

36

**APPENDIX A**

**PUBLIC AND COMMON USE AREAS AT LIBERTY PLAZA**

As soon as reasonably possible, but no later than 6 months from the entry of this Order, Defendants shall finish the retrofits identified in this Appendix A.

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2**

**BUILDING MAIN ENTRANCE AND LOBBY**

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 1) | Swinging doors adjacent to revolving door | 31½" and 31⅝" clear width | Will adjust to provide 32" min. clear width. |
| 2) | Swinging doors adjacent to revolving door | Opening force - left door (facing the doors from inside) 13 lbs., right door 23 lbs. | Will decrease opening force of left and right doors to 8.5 lbs. max. |

**LEASING OFFICE TOILET ROOM – LEFT\***

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 3) | Entrance door – marble threshold | ¾" high on the bathroom side with a 1:1 bevel; ⅝" high on the hallway side with a 1:1 bevel | Will adjust to flush; or ¼" high max.; or ½" high max. beveled at 1:2.  Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 4) | Room clearance | Clear floor space 74" x 51⅞" beyond door swing | Will adjust to 60" turning circle; or T-shaped turning space. |
| 5) | Toilet – clearance | 35" between side wall and lavatory | Will increase clearance to 36" min. |
| 6) | Grab bar – rear | No rear grab bar | Will install rear grab bar. |

\* Right/left orientation is based on entering the leasing office from the common hallway

## ADMINISTRATIVE OFFICE

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 7) | Entrance door – marble threshold | 1" high on both sides with a 1:1 bevel | Will make flush, or ¼" high max, or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |

## LAUNDRY ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 8) | Large capacity dryers – card slot | 62¼" AFF | Will install one large capacity dryer with card slot at 54" max. AFF for side reach; 48" max. AFF for forward reach. |

## LAUNDRY ROOM - TOILET ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 9) | Toilet seat | 20" AFF | Will adjust toilet seat height to 17" min. to 19" max. AFF. |

## MAILBOXES

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 10) | Mailboxes | Top 3 rows at 63½", 58" and 52¾" AFF | Will assign mailboxes that are 48" AFF max. to tenants with disabilities.<br><br>If such reassignment is not possible, will provide alternative mail service by building staff for any tenant with a disability assigned to a mailbox more than 48" AFF. Specifically, the reception desk will arrange for daily mail delivery between 8:30 a.m. and 6:30 p.m. to the tenant apartment.<br><br>Tenants will be notified of the mailbox reassignment |

2

|  | | and alternative mail service procedures in writing, and notices of this procedure will be posted on building bulletin boards. |

## CHILDREN'S PLAY ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 11) | Entrance door, common hallway to play room vestibule – threshold | ¾" high on both sides; beveled at 1:1 | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 12) | Entrance door, common hallway to play room vestibule | Opening force 10 lbs. | Will decrease opening force to 5 lbs. max. |
| 13) | Entrance door, play room vestibule to play room | 1" high on the play room side; 1" high on the vestibule side | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 14) | Entrance door, play room vestibule to play room | Opening force 10 lbs. | Will decrease opening force to 5 lbs. max. |

## FITNESS CENTER

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 15) | Entrance door – threshold | ¾" high on the hallway side; 1½" high on the fitness center side; beveled at 1:1 | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel.  Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |

## FITNESS CENTER – TOILET ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 16) | Entrance door – threshold | 1" high on both sides with a 1:1 bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with |

| | | 8.33% max. running slope. |
|---|---|---|
| 17) | Toilet seat | 20" AFF | Will adjust toilet seat height to between 17" min. and 19" max. AFF. |

## POOL AREA

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 18) | Entrance door from common hallway | Opening force 16 lbs. | Will decrease opening force to 5 lbs. max. |
| 19) | Rinsing shower heads | Fixed head at 79" AFF | Will adjust one spray unit on a 60" min. hose, mounted within an allowable reach range. |
| 20) | Sliding doors to terrace | Opening force 11 lbs. | Will decrease opening force to 5 lbs. max. |
| 21) | Sliding doors to terrace – threshold | 1" high | Will make flush; or 1/4" high max., or 1/2" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |

## POOL AREA – MEN'S LOCKER ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 22) | Lavatories | Centerline 11¾" and 12" from side wall | Will adjust one lavatory to 15" min. centerline from side wall for a centered forward approach, or will add third sink with 15" min, centerline from side wall. |
| 23) | Lavatories | Knee clearance 25¼" AFF | Will provide knee clearance 29" min. AFF at apron; 27" min. AFF elsewhere. |
| 24) | Sinks | No insulation | Will install pipe insulation. |
| 25) | Toilet compartment – door | 2'-10" wide door; 31⅛" clear width | Will adjust to provide 32" min. clear opening width. |
| 26) | Urinal | Lip 24⅛" AFF | Will lower lip to 17" max AFF. |
| 27) | Urinal | Flush control 47" AFF | Will lower flush control to 44" max AFF. |
| 28) | Sauna – door threshold | Two ¾" abrupt level changes; 1½" high total | Extend sauna floor to one level, 1½" high above the locker room floor; provide rubber ramp (adjusted to threshold height) that will remain on locker room |

4

| # | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---------|-----------|----------------------|
| | | | floor. Slope of the ramp not to exceed 1:12. |
| 29) | Shower stall – door | 2'-10" wide door; 31⅛" clear width | Will adjust to provide 32" min. clear opening width. |
| 30) | Shower stall – depth | Stall depth 44" from face of opening to the control wall; seat 8¼" from face of opening | Will provide a longer shower seat placing clear floor space at the stall opening close enough to the seat to allow a transfer. |
| 31) | Shower stall – clear floor space | Clear floor space extends 5½" beyond the seat wall | Will relocate entry wall to provide 12" min. clear floor space beyond the seat wall. |
| 32) | Shower stall – shower head | Fixed head at 74" AFF | Will provide for spray unit on a 60" min. hose, mounted within an allowable reach range. |
| 33) | Shower stall – grab bar | 40½" AFF | Will lower grab bar to between 33" min. and 36" max. AFF, measured to the centerline of the bar. |

## POOL AREA – WOMEN'S LOCKER ROOM

| # | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---------|-----------|----------------------|
| 34) | Lavatories | Knee clearance 25" AFF | Will provide for knee clearance 29" min. AFF at apron; 27" min. AFF elsewhere. |
| 35) | Feminine product dispenser | Coin slot 63¼" AFF | Will provide additional feminine products for free at bathroom counter. |
| 36) | Toilet compartment – door | Pull side latch clearance 12" | Will install automatic door opener. |
| 37) | Toilet compartment – door | 2'-10" wide door; 31⅛" clear width | Will adjust to provide 32" min. clear opening width. |
| 38) | Toilet compartment – size | 53" wide across the toilet rear wall | Remove front and side partitions to front toilet stall and install rear and side grab bars around front toilet; block access to rear toilet stall or remove rear toilet stall; install locking main door to toilet room. |
| 39) | Toilet seat | 20" AFF | Will lower seat to between 17" min. and 19" max. AFF. |
| 40) | Toilet – flush control | Flush control on narrow side of the clear floor space | Will move flush control to the wide side of the clear floor space. |
| 41) | Grab bar – side | 36" long; mounted 5" from the rear wall | Will increase grab bar length to 42" min. mounted 12" from the rear wall. |

5

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 42) | Sauna – door threshold | Two ¾" abrupt level changes; 1½" high total | Extend sauna floor to one level, 1½" high above the locker room floor; provide rubber ramp (adjusted to threshold height) that will remain on locker room floor. Slope of the ramp not to exceed 1:12. |
| 43) | Shower stall – door | 2'-10" wide door; 31¼" clear width | Will adjust to provide 32" min. clear opening width. |
| 44) | Shower stall – towel hook | Approximately 72" AFF | Will lower towel hook to 54" max. AFF for side reach, 48" max. AFF for forward reach. |
| 45) | Shower stall – depth | Stall depth 39" from face of opening to the control wall | Will provide for a stall depth of 36" for transfer-type shower. |
| 46) | Shower stall – clear floor space | Clear floor space extends 5" beyond the seat wall | Will provide for 12" min. clear floor space beyond the seat wall. |
| 47) | Shower stall – shower head | Fixed head at 74½" AFF | Will provide for spray unit on a 60" min. hose, mounted within an allowable reach range. |
| 48) | Shower stall – seat | No seat | Will install seat for transfer-type shower. |
| 49) | Shower stall – grab bar | 40¼" AFF | Will lower grab bar to between 33" min. to 36" max. AFF, measured to the centerline of the bar. |

**CONFERENCE ROOM – 3RD FLOOR**

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 50) | Entrance door – threshold | 1" high on both sides | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 51) | Kitchen entrance door – threshold | ¾" high on both sides | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |

**CONFERENCE ROOM – AT ELEVATOR LOBBY**

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 52) | Entrance door, common | 1" high on the vestibule side; ¾" high on | Will make flush; or ¼" high max.; or ½" high max., |

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
|  | hallway to vestibule – threshold | the common hallway side | with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 53) | Entrance door, vestibule to conference room - threshold | 1⅛" high on the vestibule side; ¾" high on the common hallway side | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |

### CONFERENCE ROOM VESTIBULE AT ELEVATOR LOBBY - TOILET ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 54) | Entrance door – threshold | ¾" high on the vestibule side; 1" high on the common hallway side | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |

### PARKING – INTERIOR ROUTE TO VALET AREA

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 55) | Door from main lobby to first hallway | Opening force 8 lbs. | Will decrease opening force to 5 lbs. max. |
| 56) | Door from main lobby to first hallway | 50½" pull side clearance perpendicular to the door | Will install automated door. |
| 57) | Door from first hallway to ramped hallway – threshold | ¾" high with 1:1 bevel on the first hallway side | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 58) | Ramped hallway | Running slope 9.4% to 9.7% on the upper half of the ramp run; 9.2% to 9.3% near bottom landing | Will reduce running slope to 8.33% max. |

## TRASH CHUTE ROOMS (ALL FLOORS)

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 59) | Door threshold | 1⅛" high | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |

8

# APPENDIX B
## UNIT RETROFITS AT LIBERTY PLAZA

Defendants shall finish the retrofits listed in this Appendix B within the term of the Consent Decree.[1]

### UNIT ENTRANCE DOORS – MANUVERING CLEARANCE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 4A-45A; 31B-40B | 9" push side latch clearance | Will provide an automated door opener upon the request of a resident or prospective resident. |

### CLEARING OPEN WIDTH OF DOORS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 3, SEC. (2)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units (except 4H) | Clear opening width of bedroom doors is between 31⅛" and 31½" | Will increase clear width to 31⅝" min, with the use of swing-clear offset door or otherwise, upon the request of a resident or prospective resident. |
| All units | Clear opening width of bathroom doors is between 31⅛" and 31½" | Will increase clear width to 31⅝" min, with the use of swing-clear offset door or otherwise, upon the request of a resident or prospective resident. |
| 4F, 46A, 46B, 46C | Clear opening width of bedroom walk-in closet door is between 31⅛" and 31½" | Will increase clear width to 31⅝" min, with the use of swing-clear offset door or otherwise, upon the request of a resident or prospective resident. |
| 4E, 4F, 4G, and 4H (closet door at entry); 46A (master bedroom linen closet door) | Door between 2'-4" and 2'-6" wide | Will extend shelves in linen closet forward to front of door opening. Will provide adjustable wheeled garment rack in closets at entry, or reduce depth of closet to 26" upon request of a resident or prospective resident. |

h in the Inspection Data Report for Liberty Plaza, each of 4E, 4F, 4G, and 4H is a "multi-story unit" and "only the main entry level (lower level) is a covered level." None of the retrofits requir
shall be read to apply to the upper levels of the above-listed units.

## HALLWAY – WIDTH
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (1)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 4A-45A | 35½" to 35¾" wide | Will strip drywall to widen hallway to 36" min. upon request of a resident or prospective resident. |

## UNIT ENTRANCE DOOR – THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | ⅞" to 1" high on public hallway side | Will make flush; or provide ¼" high max. threshold, if not beveled; or provide max. threshold, beveled at ratio of 1:2 max. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 4F, 4G, 4H | ⅝" to ¾" high on dwelling unit side | Will make flush; or provide ¼" high max. threshold, if not beveled; or provide max. threshold, beveled at ratio of 1:2 max. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

## KITCHEN - MARBLE THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | ⅞" to 1" high on kitchen side; ⅝" to ¾" high on hallway side with a 1:1 bevel | Will make flush; or provide ¼" high max. threshold, if not beveled; or provide max. threshold, beveled at ratio of 1:2 max. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

## BATHROOM – MARBLE THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units (including powder room in 46A, 46B, and 46C) | ¾" to 1" high on the bathroom side with a 1:1 bevel; ½" high on the hallway side with a 1:1 bevel | Will make flush; or provide ¼" high max. threshold, if not beveled; or provide max. threshold, beveled at ratio of 1:2 max. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Con... |

Decree, whichever comes earliest.

## KITCHEN OUTLETS
## FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 1A-45A (outlet right of sink), 6D-45D (outlet right of sink), 6E-45E (outlet right of sink), 6F-45F (outlets left and right of sink), 31-45B (outlet right of sink), 46A (outlets left and right of range, left of sink); 46B (outlet left of sink), 46C (outlet right of range) | 4½" to 11¼" from sidewall | Will move outlets, install new outlets, or provide wall-mounted power strips such that the distance from the sidewall measured to the centerline of the outlets is 1" min.  Retrofit will be made upon the request of a resident or prospective resident upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 1A-45A (outlet left of sink), 4D (outlet right of sink), 4E (outlets left and right of sink), 4G (outlet right of sink), 4H (outlets left and right of sink), 5C (outlet left of sink), 5D (outlet right of sink), 6D-45D (outlet left of sink), 6E-45E (outlet left of sink) | 14½" to 24" reach on the sidewall | Will decrease distance from the face of the base cabinets to 12" max. measured to the centerline of the outlets upon request of a resident or prospective resident |
| 1A-45A (outlet left of range), 4B-31B (outlet left of range), 4D (outlet right of range), 4G (outlet right of range), 4H (outlet left of range), 5D (outlet right of range), 6C-45C (outlet right of range), 6D-45D (outlet left of range), 6E-45E (outlet left of range), 6F-45F (outlet left of range), 31B-45B (outlet left of range), 46B | 6½" to 10" from the refrigerator partition | Will move outlets, install new outlets, or provide wall-mounted power strips such that the distance from the sidewall measured to the centerline of the outlets is 1" min.  Retrofit will be made upon the request of a resident or prospective resident upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

lowing unit, Liberty Plaza will provide a power strip mounted on the sidewall or refrigerator partition itself, such that the power strip is positioned no more than 12" from the face of the base c
or range: 46C (outlet right of range).

lowing unit(s), Liberty Plaza will provide a power strip mounted on the sidewall or refrigerator partition itself, such that the power strip is positioned no more than 12" from the face of the base
or range: 4A-45A (outlet left of range); 4B-31B (outlet left of range); 31B-45B (outlet left of range); 6D-45D (outlet left of range); 6E-45E (outlet left of range); 4G (outlet right of range); 4H
5C (outlet left of range).

3

| | |
|---|---|
| outlet right of range, 46C (outlet left of range) | |

## TERRACE DOOR THRESHOLD – INTERIOR SIDE
## FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 5G, 46A, 46B, 46C (bedroom and living room terrace doors) | 1" to 3" total height, no bevel | Will make flush; or provide ¼" high max. threshold, if not beveled; or provide ¼" max. threshold, beveled at ratio of 1:2 max., or provide 1:12 beveled threshold |

## OBSTRUCTION OF GRAB BAR LOCATION
## FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 6

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units | Banjo counter top at lavatory obstructs grab bar location | In 60 units, will remove banjo countertop and replace with countertops that do obstruct the rear grab bar location. Of the 60 units retrofit, 18 must be in two-bedroom units, and 42 must be in one-bedroom units.<br><br>The 60 units that are retrofit must include the 55 units where the refrigerators are replaced with low-profile refrigerators or 40" min. width is otherwise provided pursuant to Condition 18, the bathroom door swing is reversed and/or bathroom cabinets that are removable by design have been installed.[4] Unit 6G, which fe... terrace, will be among these 60 units.<br><br>Retrofit will be made upon the request of a resident or prospective resident up... vacancy, or within the term of the Consent Decree, whichever comes earlier.<br><br>For the remaining units, will remove banjo countertop and replace with counter... that do not obstruct the rear grab bar location upon the request of a resident or prospective resident. |

4

Footnote 6.

## KITCHEN RANGES
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 4A-44A, 4D, 4E, 4G, 4H, 5D, 6G-45G | Centerline 16" – 23" from side wall or alcove wall heater | In 55 units, will make adjacent wall flush with countertop edge where possible, swap kitchen ranges with adjacent countertops where adjacent wall cannot be made flush with countertop edge. Of the 55 units retrofit, 18 must be two-bedroom units and 37 must be one-bedroom units. |
| | | Retrofit will be made upon the request of a resident or prospective resident upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| | | In the remaining units, will make adjacent wall flush with countertop edge or swap kitchen ranges with adjacent countertops upon the request of a resident or prospective resident. |

## KITCHEN REFRIGERATOR
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| All units except 6C-45C, 6G-45G, 46C | Corner location –centerline 16" from side wall | Will move refrigerators from corner location to provide for 24" min. centerline side wall upon request of a resident or prospective resident. |

## KITCHEN CLEARANCE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(b)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 4A-45A, 4E, 4F, 4H, 5C, 5D, 6C-45C, 5D-45D, 6E-45E, 6G-45G, 46C | 37" to 39¾" width at the refrigerator and/or at the range | In 55 units, will install low-profile refrigerators or remove any existing obstruction to provide 40" min. width. Of the 55 units retrofit, 18 must be two-bedroom units and must be one-bedroom units. The 55 units that are retrofit must also be units wi... |

5

banjo countertops are replaced, the bathroom door swing is reversed and/or bat[h] base cabinets that are removable by design have been installed.[5] Unit 6G, whi[ch] features a terrace, will be among these 55 units.

Retrofit will be made upon the request of a resident or prospective resident up[on] vacancy, or within the term of the Consent Decree, whichever comes earliest.

In the remaining units, will install low-profile refrigerators upon the request of [a] resident or prospective resident.

**BATHROOM CLEAR FLOOR SPACE**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(i)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 4A-45A, 4B-31B, 4D, 4E, 4F, 4G, 4H, 5C, 5D (hall and master bathrooms), 6C-45C, 6D-45D, 6E-45E, 6F-45F (hall and master bathrooms), 6G-45G, 31B-45B | Clear floor space beyond the door swing is between 13¾" and 34¾" wide; between 36" and 42½" long | In 60 units, will reverse the door swing or, where applicable, will ensure that installation of bathroom base cabinets that are removable by design provides su[fficient] clear floor space.[6] Of the 60 units retrofit, 18 must be two-bedroom units and [must] be one-bedroom units. The 60 units that are retrofit must include the 60 units [where] the banjo countertops are replaced, and bathroom base cabinets that are remov[ed by] design have been installed, and the 55 units where the refrigerators are replace[d by] low-profile refrigerators or 40" min. width is otherwise provided pursuant to C[ondition] 18. Unit 6G, which features a terrace, will be among these 60 units. Retrofit will be made upon the request of a resident or prospective resident up[on] vacancy, or within the term of the Consent Decree, whichever comes earliest. In the remaining units, will reverse the door swing upon the request of a reside[nt or] prospective resident. |

Footnote 6.

[Docum]ent that the installation of a removable-by-design base cabinet, pursuant to condition 23 below, results in a compliant condition such that reversing the door swing is no longer necessary to esta[blish] [cle]ar floor space necessary for compliance with the referenced guideline, the door swing will not also be reversed.

## BATHROOM TOILETS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 4A-45A, 4B-31B, 4D (hall and master bathrooms), 4E, 4F, 4G, 4H, 5C, 5D (hall and master bathrooms), 6C-45C, 6D-45D, 5E-45E, 6F-45F (hall and master bathrooms), 6G-45G (hall and master bathrooms), 31B-45B, 46A (master bathroom), 46B (master bathroom), 46C (master bathroom) | Centerline between 15" and 21½" from side wall | Will install offset flanges to provide for centerline between 16" and 18" from s[...] upon request of a resident or prospective resident. |
| 4A-45A, 4B-31B, 4D (hall and master bathrooms), 4E, 4F, 4G, 4H, 5C, 5D (hall and master bathrooms), 6C-45C, 6D-45D, 5E-45E, 6F-45F (hall and master bathrooms), 6G-45G (hall and master bathrooms), 31B-45B | 31-32" between side wall and lavatory | Will provide for 33" min. clearance upon request of a resident or prospective r[...] |
| 46C (master bathroom) | 34⅝" alcove depth at the adjacent lavatory side wall | Will adjust alcove depth to 24" max upon request of a resident or prospective r[...] |

## BATHROOM LAVATORIES
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| 4A-45A, 4B-31B, 4D (hall and master bathrooms), 4E, 4F, 4G, 4H, 5C, 5D (hall and master bathrooms), 6C-45C, 6D-45D, 5E-45E, 6F-45F (hall and master bathrooms), 6G-45G (hall and master | Centerline 14" to 19¼" from bathtub/shower enclosure with no removable base cabinet | In 60 units, will install base cabinets that are removable by design with compli[...] and toe space at the lavatory, finished wall and floor beneath, and covered pipe[...] the 60 units retrofit, 18 must be two-bedroom units, and 42 must be one-bedroo[...] The 60 units that are retrofit must include the 60 units where the banjo counter[...] replaced, and the bathroom door swing has been reversed, and the 55 units (wh[...] |

7

| | |
|---|---|
| bathrooms), 31B-45B, 46A (left and right fixtures in master bathroom), 46B (left and right fixtures in master bathroom), 46C (left and right fixtures in master bathroom) | refrigerators are replaced with low-profile refrigerators or 40" min. width is otherwise provided pursuant to Condition 18.[7]  Unit 6G, which features a terrace, will be... these 60 units.<br><br>Retrofit will be made upon the request of a resident or prospective resident up... vacancy, or within the term of the Consent Decree, whichever comes earliest.<br><br>In the remaining units, will install base cabinets that are removable by design w... compliant knee and toe space at the lavatory, finished wall and floor beneath, a... covered pipes upon the request of a resident or prospective resident. |

footnote 6.

## APPENDIX C

## NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS
## OF LIBERTY PLAZA

To Our Residents and Prospective Residents:

Federal law requires that the public and common use areas at Liberty Plaza contain accessibility features for persons with disabilities. Within the next six months, we will be undertaking a program of retrofits to the public and common use areas to make them more accessible to persons with disabilities. A list of mandatory retrofits we will be undertaking is available at the leasing office. We do not anticipate that current residents will have to be relocated during the term of their tenancy or that prospective residents will have their move-in dates delayed because of the retrofits we will be undertaking.

Should you have questions regarding this letter, please contact the leasing office at Liberty Plaza, or the United States Attorney's Office, Southern District of New York, at (212) 637-0840.

Sincerely,
Glenwood Management Corporation

### APPENDIX D

### NOTICE TO RESIDENTS OR PROSPECTIVE RESIDENTS
### OF RETROFITS FOR LIBERTY PLAZA,
### WHICH MUST BE SCHEDULED WITHIN THE NEXT SIX MONTHS

Liberty Plaza is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that, as a result of a settlement in a case brought by the United States against the developers and designers of this apartment complex, we have agreed to modify, by varying degrees, certain apartments at Liberty Plaza to provide greater accessibility for people with disabilities. Your unit or prospective unit is one of those that has been identified as appropriate for certain retrofits. We want you to know that you may request to have your apartment, or prospective apartment, modified now at no cost to you. Should you have to move out temporarily, we will pay reasonable relocation and housing expenses while the modifications are being made.

Depending on the particular features in your unit, the modifications may include:

- Modification of door entries and thresholds to ensure accessibility to persons in wheelchairs;

- Modification of bathrooms to ensure accessibility to persons in wheelchairs;

- Modification of kitchen appliances to ensure usability by persons with disabilities; or

- Lowering of electrical outlets or installation of power strips.

While you do not have to request the modifications now, you should be aware that some of this work may be required at some point during the term of your lease. A representative will be contacting you soon to review these modifications and to discuss a time frame within which these modifications may be made.

If you have any questions, please contact us at the management office.

**APPENDIX E**

**ADDITIONAL PROPERTIES**

| Name | Location |
|------|----------|
| Brittany | 1775 York Avenue<br>New York, NY 10128 |
| Paramount Tower | 240 East 39th Street<br>New York, NY 10016 |
| The Grand Tier | 1930 Broadway<br>New York, NY 10023 |
| Barclay Tower | 10 Barclay Street<br>New York, NY 10007 |
| Emerald Green | 320 West 38th Street<br>New York, NY 10018 |

**APPENDIX F**

**NOTICE TO PERSONS WHO MAY HAVE SUFFERED FROM INADEQUATE ACCESSIBLE FEATURES AT LIBERTY PLAZA AND OTHER RENTAL BUILDINGS**

On _____ 2015, the United States District Court for the Southern District of New York entered a consent decree resolving a lawsuit brought by the United States Department of Justice against certain builders and developers alleging that they failed to include certain accessible features for persons with disabilities required by the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(c), in the design and construction of Liberty Plaza.

Under this consent decree, a person may be entitled to receive monetary relief if, in relation to any of the properties identified below, he or she:

- WAS DISCOURAGED FROM LIVING AT THAT PROPERTY BECAUSE OF THE LACK OF ACCESSIBLE FEATURES;

- HAS BEEN HURT IN ANY WAY BY THE LACK OF ACCESSIBLE FEATURES AT THAT PROPERTY;

- PAID TO HAVE AN APARTMENT AT THAT PROPERTY MADE MORE ACCESSIBLE TO PERSONS WITH DISABILITIES; OR

- WAS OTHERWISE DISCRIMINATED AGAINST ON THE BASIS OF DISABILITY AT THAT PROPERTY.

The properties relevant to this notice are:

- LIBERTY PLAZA
- BRITTANY
- PARAMOUNT TOWER
- THE GRAND TIER
- BARCLAY TOWER
- EMERALD GREEN

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please contact the United States Attorney's Office, Southern District of New York at 212-637-2800. You may also fax us at 212-637-2702 or write to:

United States Attorney's Office, Southern District of New York
Attn: Civil Rights Unit
86 Chambers Street
New York, New York 10007

NOTE: You must call or write no later than _____, 20__ .

## APPENDIX G

## RELEASE FORM

In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in *United States of America v. Glenwood Management Corporation et al.*, 15 Civ. _____ (____) (S.D.N.Y.), I hereby release _____ from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action.

I fully acknowledge and agree that this release of the above-named parties shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
Signature

_____
Print name

_____
Date

## APPENDIX H

## ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER

I _____, am an employee of _____ and my duties include _____. I have received and read a copy of the Consent Decree, or a summary thereof, in *United States of America v. Glenwood Management Corporation et al.*, 15 Civ. \_\_\_\_ (\_\_\_) (S.D.N.Y.), and have been given instruction on (1) the terms of this Consent Decree, (2) the requirements of the Fair Housing Act, particularly related to the Act's design and construction requirements, and (3) my responsibilities and obligations under the Consent Decree and the Fair Housing Act. I have had all of my questions concerning the Consent Decree answered to my satisfaction.

_____, 20\_\_\_

_____
Employee Signature

**APPENDIX I**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities. I was also instructed as to the rental policies and procedures, including the nondiscrimination, complaint, and reasonable accommodation policies of the Fair Housing Act. I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____

Employee Signature

_____

Print Name

_____

Date

# APPENDIX J

## LIST OF CONDITIONS FOR INSPECTION OF ADDITIONAL PROPERTIES

1) Door clear opening widths

2) Unit entrance door hardware

3) Unit entrance door maneuvering clearance (exterior side)

4) Entry thresholds

5) Kitchen thresholds

6) Bathroom thresholds

7) Terrace/balcony thresholds

8) Accessible route throughout the unit

9) Range clear floor space

10) Sink clear floor space

11) Refrigerator clear floor space

12) 40″ clearance in galley kitchens/60″ clearance in U-shaped kitchens

13) Kitchen outlets

14) Living room outlets

15) Bathroom clear floor space

16) Toilet distance to side wall

17) Toilet side and rear grab bar reinforcement

18) Bathroom sink clear floor space

19) Bathroom outlets

20) Bathroom toilet clear floor space

21) Bathroom tub/shower clear floor space

22) Locations of light switches, thermostats, and other environmental controls in units